UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.J.P., a minor, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, et al.,<br><br>         Defendants. | Case No.: 15cv2692-H-MDD<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE DEPOSITION OF LOAN NGUYEN**<br><br>**[ECF NO. 100]** |

A joint motion for determination of a discovery dispute re the deposition of Plaintiff Loan Nguyen was filed on June 30, 2017. (ECF No. 100). In this motion, Defendants seek to compel deposition testimony from Loan Nguyen about her conversations with her husband, decedent "Lucky" Phounsy, concerning his use of drugs and alcohol prior to his death. Plaintiff objects to providing the testimony on marital communications privilege grounds.

**I. Background Facts**

In this civil rights action, Plaintiffs allege "Lucky" Phounsy died as a result of alleged excessive force by San Diego County Sheriff's Deputies and

1

15cv2692-H-MDD

as a result of the alleged failure of Santee and Lakeside Fire Emergency Medical Services personnel to provide adequate medical care. The alleged misconduct occurred on April 13, 2015, when Defendants were responding to emergency calls concerning Mr. Phounsy's erratic and dangerous behavior, which Defendants argue stemmed from his use of alcohol and illegal drugs. Defendants allege Mr. Phounsy used illegal drugs at Coachella Music Festival in the days before April 13, 2015.

Plaintiff Loan Nguyen was Mr. Phounsy's wife. Plaintiff Nguyen witnessed some of the underlying events, and spoke with Mr. Phounsy about what happened at Coachella before he died.

On May 24, 2017, Plaintiff Nguyen's deposition proceeded as noticed. (ECF No. 100). In this motion, Defendants present four lines of examination from her deposition that are in dispute. (ECF No. 100 at 5-10[1]).

## II. Disputed Testimony

### a. Line of Examination #1

In the first line of examination, Defendants asked Plaintiff Nguyen what Mr. Phounsy told her happened at Coachella. (*Id.* at 5). Plaintiff Nguyen's attorney, Mr. McBride, did not object. Plaintiff Nguyen responded "[o]h, he just told me that he walked around by himself and that he went into a room and he got on stage and was singing and a lot of people where [*sic*] applauding him because he was rapping. And that's pretty much it."

Defendants then asked "[a]t what point did he tell you that he had been using drugs?" Mr. McBride objected on grounds of marital privilege and stated "I'm going to have her not respond about any communications they

---

[1] Pincites refer to the automatically-generated CM/ECF pagination rather than the pagination in the original document.

2

15cv2692-H-MDD

had." Defendants disagreed about the applicability of the privilege and further argued that if the privilege applied "it's waived because this witness already gave this information to police investigators." Mr. McBride responded, "Well, we dispute what is in a lot of these police records that she's ever said that." Mr. McBride stated "I'm not going to allow her to talk about communications between her and Lucky while they were married."

After further discussion, the parties agreed to go off the record to attempt to contact the Magistrate Judge to resolve the dispute. The Magistrate Judge was unavailable.

### b. Line of Examination #2

The second line of examination concerns Plaintiff Nguyen's conversations with deputies and Mr. Phounsy about drug use. (*Id*. at 6-7). The testimony in dispute follows:

> Q: Did you tell her [the deputy] anything like that, about any drug use?
>
> A: I just told her [the deputy] –I just named Ecstasy and what was the other one she said.
>
> Q: She [the deputy] said—described it as acid?
>
> A: Yes. I just named it out because what I thought Lucky was probably on.
>
> Q: So that's not something he [Lucky] told you?
>
> A: Not something—
>
> Q: He [Lucky] didn't tell you anything about using those drugs?
>
> MR. MCBRIDE: Objection. Marital privilege. She's not going to respond regarding any communications between her

3

and Lucky.

(*Id.*).

### c. Line of Examination #3

The third line of examination involves the following testimony:

> Q: At any time prior to the incident in April of 2015, did you and Lucky ever discuss Lucky getting some sort of assistance for his alcohol use?
>
> A: Yes.
>
> MR. MCBRIDE: Objection. Other than communications you guys had during the marriage. So you can answer prior to the marriage if you guys discussed that, but not during the marriage.

(*Id.* at 7).

### d. Line of Examination #4

The fourth line of examination includes the following excerpts:

> Q: So you didn't tell anybody in the family about Lucky's drug use at Coachella—
>
> MR. MCBRIDE: Objection.
>
> Q: —that evening before 911 was called?
>
> MR. MCBRIDE: Lacks foundation. Calls for speculation. Assumes facts.
>
> THE WITNESS: I told them that—I told them what I assumed Lucky was on.
>
> BY MR. OSTERBERG [Defendant's attorney]:
> Q: Okay. What did you tell them.
>
> A: That I think Lucky has done Ecstasy and acid while he was in Coachella.

4

    Q: And what did you base that assumption on?

    MR. MCBRIDE: Objection. Marital/spousal privilege. You can answer with regard to anything other than confidential communications between you and Lucky.

    …

    Q: And let me ask you a new question. Why did you assume—you said—you used the word "assumption." Why did you assume that Lucky had used acid, Ecstasy, and other drugs at Coachella?

    MR. MCBRIDE: Objection. Misstates testimony. Marital/Spousal privilege. You can answer insofar as it doesn't include any confidential communications between you and Lucky. If you saw or heard anything else other than communications between you and Lucky, you can go ahead and answer.

    (Witness shakes head)

    BY MR. OSTERBERG:

    Q: Go ahead.

    A: That was between me and Lucky.

    Q: So the conversation you have about the drug use was just between you and Lucky?

    MR. MCBRIDE: No, no. Same objections. She's not answering any questions about any conversations they may or may not have had. If you have something about things other than those communications, you can go ahead and ask. But she's not going to testify about her and Lucky's confidential communications.

    …

(ECF No. 100 at 8-10).

## III. Legal Standard

In accordance with Federal Rule of Evidence 501's provision that "[t]he common law—as interpreted by the United States courts in the light of reason and experience—govern a claim of privilege," the Ninth Circuit recognizes the "marital communications" privilege. FED. R. EVID. 501; *U.S. v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990); *see also Brown v. Wimberly*, Case No. 1:14cv1812-JLT, 2016 WL 3569618, *2 (E.D. Cal. June 30, 2012).

The marital communications privilege "bars testimony concerning statements privately communicated between spouses." *Marashi*, 913 F.3d at 729. "This privilege (1) 'extends only to words or acts intended as communication to the other spouse'; (2) 'covers only those communications made during a valid marriage'; and (3) 'applies only to those marital communications which are confidential.'" *Ross v. Santa Clara Cnty. Sheriff's Dep't (SCCSD)*, Case No. 5:14cv1770-EJD-HRL, 2015 WL 4484152, *3 (N.D. Cal. July 22, 2015) (quoting *Marashi*, 913 F.3d at 729). The privilege continues to apply to communications made during the marriage even after the marriage has ended. *Marashi*, 913 F.3d at 729.

Although courts must "narrowly construe the marital communications privilege because it obstructs the truth-seeking process," "[m]arital communications are presumptively confidential." *Marashi*, 913 F.2d at 730.

The privilege applies to words or communicative conduct, but does not apply to observations of non-communicative conduct. *See, e.g., Marashi*, 913 F.3d at 729; *Brown*, 2016 WL 3569618, at *3 (collecting cases).

"The privilege does not extend to statements which are made before, or likely to be overheard by, third parties." *Marashi*, 913 F.3d at 729. But involuntary disclosures to third parties do not automatically waive the attorney-client privilege. *United States v. de la Jara,* 973 F.2d 746, 749–750

6

(9th Cir. 1992); *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012). The spouse may selectively waive the privilege, "but the waiver, once it occurs, is as to the *entirety* of… that particular *subject* not simply as to that particular time the subject was discussed." *Brown*, 2016 WL 3569618, at *4.

### IV. Parties' Contentions

The parties disagree about the application of the marital communications privilege to Plaintiff Nguyen's testimony. Defendants contend that the communications were not made in confidence because they were later disclosed to third parties. Defendants further argue that even if the marital communications were privileged, Plaintiff Nguyen waived the privilege by disclosing information Mr. Phounsy told her regarding his drug use at the Coachella Music Festival to third parties during the underlying incident. (ECF No. 100-1). Defendants offer evidence to show that Ms. Nguyen disclosed marital communications to each of these third parties:

1) San Diego Sheriff's Deputy Sandra Janet Carbajal;
   - Carbajal Deposition (ECF No. 100-3 at 25-26 (Exh. B));
2) San Diego Sheriff's Detective Carpenter;
   - Transcript of Audio Recorded Interview (ECF No. 100-3 at 43-46 (Exh. D));
3) Lakeside Fire Protection Firefighter/Paramedic David Csik;
   - Csik Deposition (ECF No. 100-3 at 34-36 (Exh. C));
4) Sharp Grossmont Hospital Acute Patient Intake Form;
   - (ECF No. 100-3 at 52 (Exh. E));
5) Donate Life California Organ & Tissue Donor Registry;
   - (ECF No. 100-3 at 59 (Exh. E));

7

15cv2692-H-MDD

6) Plaintiff's retained Vocational Rehabilitation Expert, Behnush B. Mortimer, Ph.D., CRC, CVE.
- Expert's notes (ECF No. 100-5 at 17 (Exh. A));
- Expert's Report (ECF No. 100-6 at 4 (Exh. B)).

(ECF No. 100-1 (memorandum), 100-2 (Osterberg declaration authenticating exhibits B-E), ECF No. 100-3 (Exhs. B-E), 100-4 (Dean declaration authenticating exhibits A and B), 100-5 (Exh. A), 100-6 (Exh. B)).

Plaintiff takes the position that "[n]one of the statements Ms. Nguyen made following the incident giving rise to this event, with respect to any drugs Lucky may or may not have taken in the days leading up to this incident, were based on communications that Lucky made to Ms. Nguyen in confidence." (ECF No. 100-7 at 3:4-7). Instead, Plaintiff argues, her statements to these third parties were based on her personal observations and assumptions, as she testified during her deposition. *Id*. at 3:7-8 and 4 (citing to Nguyen Depo. at 67:3-11). Plaintiff Nguyen supports this proposition with a declaration that none of the statements she made to third parties following the incident were based on communications with Mr. Phounsy; "[r]ather such statements were made based on my personal observations and assumptions regarding Lucky." (ECF No. 100-9).

Accordingly, Plaintiff argues Defendants are not harmed in their defense if they are prevented from obtaining Plaintiff Nguyen's testimony about the alleged marital conversations, because Defendants may offer evidence regarding Plaintiff Nguyen's observation-based statements to third parties instead. (ECF No. 100-7 at 5 (citing *U.S. v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir. 1980)). Plaintiff Nguyen suggests that perhaps no marital communication concerning Mr. Phounsy's use of drugs or alcohol occurred.

1    Plaintiff Nguyen does not argue that the statements to third parties
2 were involuntary disclosures or protected by a second layer of privilege (*e.g.*,
3 doctor-patient privilege) or are otherwise excepted from waiver.

## V. Analysis

The Court is not persuaded by Plaintiff's suggestion that no marital communications concerning Mr. Phounsy's drug and alcohol use occurred. Plaintiff Nguyen, in her deposition, stated that she told Mr. Phounsy's family that she thought he had done Ecstasy and acid while he was in Coachella before 911 was called. (ECF Nos. 100 at 8 (Line of Examination #4) and 100-3 (Nguyen Depo. at 13:3-15). When asked why she thought he had used acid and Ecstasy at Coachella, Plaintiff Nguyen shook her head that she was unable to identify any basis for her statement besides marital communications and responded "[t]hat was between me and Lucky." (ECF Nos. 100 at 9 and 100-3 at 14:23-15:12).

Her response unequivocally shows that Plaintiff Nguyen and her husband discussed his drug use at Coachella. Having found that at least one communication occurred, the Court next considers whether such communications are protected by the marital communications privilege.

The Court finds that the marital communications privilege applies to the marital conversations between Plaintiff Nguyen and Mr. Phounsy about his drug and alcohol use. There is no dispute that Plaintiff Nguyen and Mr. Phounsy were married at the time of the disputed communications between them. Further, the communications are presumed privileged. *Marashi*, 913 F.2d at 730; *see also Fodor v. Blakey*, Case No. 11cv8496-MMM-RZX, 2012 WL 12893986, at *8 (C.D. Cal. Dec. 31, 2012) (burden is on movant to show that statements were not made in confidence). Defendants have not overcome the presumption of confidence. They do not argue or show that

9

these communications occurred in the presence of a third party.  And Defendants' bare assertion that later disclosure to third parties somehow disrobed the communications of confidence at the time of the conversation is unavailing.

Defendants' argument that Plaintiff Nguyen waived the privilege by disclosure to third parties requires further analysis.  The waiver analysis is complicated by Plaintiff's assertion that all of the statements she made to third parties are based on observations and assumptions rather than on privileged communications.  Plaintiff admitted, however, in her undisputed deposition testimony that she disclosed to "the family" that Mr. Phounsy was on Ecstasy and acid before calling 911, and that her disclosure was based on marital communications "between [Plaintiff] and Lucky"—not observations or assumptions. (ECF Nos. 100 at 8-9 and 100-3 at 13-15 (Line of Examination #4)).

Plaintiff's declaration in support of this motion does not compel a different result.  Her declaration does not conflict with her testimony admitting disclosure before the 911 call, because it only attests to "the statements [she] made *following* the incident."  (ECF No. 100-7 at 2). Consequently, the Court finds that Plaintiff's disclosure of the marital communications to the family before the 911 call waived the marital communications privilege.

A question remains as to the scope of Plaintiff's waiver of the privilege. "[T]here may be a selective waiver but the waiver, once it occurs, is as to the *entirety* of the subject." *Brown, supra*, 2016 WL 3569618, at *4 (emphasis in original).  Even if Plaintiff disclosed only part of one conversation with her husband about his drug and alcohol use in the days before the incident, "the marital privilege is waived as to that particular *subject* not simply as to" that

10

part of the conversation or "that particular time the subject was discussed." *Id.* (emphasis in original). Consequently, the Court finds Plaintiff waived the marital communications privilege as to the entire subject of Mr. Phounsy's drug and alcohol use in the days leading up to the April 13, 2015, incident.

### VI. Conclusion

Plaintiff waived the marital communications privilege as to the subject of Mr. Phounsy's drug and alcohol use in the days before the April 13, 2015, incident. Defendants' request for an order requiring further deposition testimony from Plaintiff Nguyen regarding this subject is **GRANTED**.

The Court finds that Plaintiff's deposition objections and nondisclosures were substantially justified, and therefore Defendants' request for Rule 37(a)(5)(A) fees and costs is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 2, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge