1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **SOUTHERN DISTRICT OF CALIFORNIA**

7

| | |
|---|---|
| 8 K.J.P., a minor, and K.P.P., a minor, individually, by and through their mother, LOAN THI MINH NGUYEN, who also sues individually and as successor in interest to her now deceased husband, Lucky Phounsy, and KIMBERLY NANG CHANTHAPHANH, individually, | Case No.: 3:15-cv-2692-H-MDD **ORDER:** **DENYING, IN PART, AND GRANTING, IN PART, SHERIFF'S DEPARTMENT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING SUMMARY JUDGMENT AS TO DEFENDANT SHERIFF GORE** |

9

10

11

12

13                                   Plaintiffs,

14 v.

15 COUNTY OF SAN DIEGO, SAN
DIEGO COUNTY SHERIFF'S
16 DEPARTMENT, San Diego Sheriff
WILIAM GORE, Sheriff's Department
17 Deputy RICHARD FISHER, CITY OF
SANTEE, Santee Fire Department Fire
18 Captain AARON BAGLEY, LAKESIDE
FIRE PROTECTION DISTRICT,
19 Lakeside Fire Protection District
20 Firefighter/Paramedic MARC POYNTER,
Santee Fire Department
21 Firefighter/Paramedic AARON
22 HACKETT, Lakeside Fire Protection
District Firefighter/Paramedic DAVID
23 CSIK, Sheriff's Department Sergeant
24 KEVIN RALPH, Sheriff's Department
Corporal MARCOS COLLINS, Sheriff's
25 Department Deputy JANAE KRULL,
26 Sheriff's Department Deputy SANDRA
CARBAJAL, Sheriff's Department
27

28

**[Doc. No. 97]**

**DENYING PARAMEDIC
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

**[Doc. No. 98]**

1  Deputy BILLY TENNISON, III, Sheriff's
   Department Deputy DEAN ALLEN,
2  Sheriff's Department Deputy MICHAEL
3  LEE, Sheriff's Department Deputy,
   JENNY MARTINSON, Sheriff's
4  Department Deputy TAMANI PUGH,
5  Sheriff's Department Corporal AARON
   BROOKE, and Sheriff's Department
6  Deputy JOVONNI SILVA,

7                                    Defendants.

8

9          On December 1, 2015, Plaintiffs K.J.P, K.P.P., Loan Thi Minh Nguyen, and

10  Kimberly Nang Chanthaphanh ("Plaintiffs") filed a complaint against the County of San

11  Diego, the San Diego County Sheriff's Department, the City of Santee, the Santee Fire

12  Department, the Lakeside Fire Protection District, and various employees thereof.  (Doc.

13  No. 1.)  The complaint alleged various causes of action related to the death of Lucky

14  Phounsy, after police responded to a 9-1-1 call at the resident of Ms. Chanthaphanh.  (Id.

15  ¶ 2.)  Lucky Phounsy (hereinafter "Phounsy") was the father of K.J.P. and K.P.P.,

16  husband of Ms. Nguyen, and son of Ms. Chanthaphanh.

17          On January 22, 2016, Plaintiffs filed their First Amended Complaint.  (Doc. No.

18  21.)  The amended complaint added additional claims of gross negligence.  (Id. ¶¶ 100-

19  107.)  On February 8, 2016, Defendants City of Santee, the Santee Fire Department,

20  Richard Mattick, Aaron Hacket, and Aaron Bagley (together, the "Santee Defendants")

21  filed a motion to dismiss Plaintiffs' first amended complaint.  (Doc. No. 24.)  On

22  February 11, 2016, Defendants Lakeside Fire Protection District, Andy Parr, Marc

23  Poynter, and David Csik (together, the "Lakeside Defendants") joined the motion to

24  dismiss.  (Doc. No. 25.)  On April 29, 2016, the Court granted Defendants' motion to

25  dismiss, in part, dismissing Plaintiffs' gross negligence claims and various defendants.

26  (Doc. No. 32.)

27

28

On November 2, 2016, Plaintiffs filed the operative second amended complaint ("SAC"), adding additional individual defendants and eliminating dismissed claims. (Doc. No. 50.) Defendants subsequently answered. (Doc. Nos. 53, 54, 58, 77.)

On June 22, 2017, the County of San Diego, the San Diego County Sheriff's Department, and their respective employees filed a motion for summary judgment. (Doc. No. 97.) On June 23, 2017, the City of Santee, the Lakeside Fire Protection District, and their respective employees also filed a motion for summary judgment. (Doc. No. 98.) On July 31, 2017, Plaintiffs opposed Defendants' motions for summary judgment. (Doc. Nos. 107, 108.) Defendants filed their replies on August 7, 2017. (Doc. Nos. 111, 112.)

## BACKGROUND

On April 13, 2015, Sheriff Deputies responded to a 9-1-1 call from the residence of Defendant Chanthaphanh. (Doc. No. 107, Kelley Depo., 38:14-22.) Phounsy originally placed the 9-1-1 call, claiming that people were trying to kill him. (Id., Collins Depo. 30:5-19; Kelley Depo., 66:5-67:6.) Phounsy's family subsequently wrested the phone from him and informed the 9-1-1 operator that Phounsy was acting delusional and paranoid, thinking someone was there to kill him. (Kelley Depo. 66.)

Initially, Sheriff Deputies Janae Krull and Marcos Collins responded to the 9-1-1 call. (Krull Depo. 43; Collins Depo. 34.) Deputies Krull and Collins were met in the driveway by Greg Kelley, who informed Krull and Collins that Phounsy had recently returned from a concert at Coachella, was possibly under the influence of drugs, and was paranoid that people were trying to kill him. (Collins Depo. 35; Kelley Depo. 68; Krull Depo. 44.) Upon entering the home, Deputies Krull and Collins encountered Phounsy and attempted to pat him down to ensure he was unarmed. (Collins Depo. 52; Krull Depo. 63.) Phounsy agreed to the pat down but specifically requested he not be handcuffed. (Id.) Subsequently, when Deputies Krull and Collins attempted to handcuff Phounsy, a fight broke out. (Krull Depo. 82; Collins Depo. 69.) During the fight, Deputies Collins and Krull called for backup and additional deputies arrived to restrain Phounsy. (Krull Depo. 106, 128.)

Once Phounsy was restrained, deputies carried him out to the driveway where paramedics were waiting. (Doc. No. 97-4, Allen Depo. 65:4-17.) Phounsy was given two doses of a sedative. (Doc. No. 98-8, Poynter Decl. ¶¶ 15-16.) After his initial assessment by the paramedics, Phounsy was transported to Grossmont Hospital. (Id. ¶ 19). During the trip, Phounsy suffered cardiac arrest. (Doc. No. 107-19 at 1, Expert Report of Kris Sperry.) Later, doctors determined he had suffered serious brain injury and was unlikely to recover. (Id. at 3.) His family elected to allow him to die. (Id.)

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party shows there is no genuine dispute of material fact and they are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is no genuine dispute if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of producing evidence showing they are entitled to summary judgment. Celotex Corp., 477 U.S. at 330. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 323. If the moving party satisfies their initial burden, then the burden shifts to the nonmoving party to introduce evidence showing there is a genuine dispute of material fact. Id. at 331. A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To satisfy its burden, the non-moving party "may not rest upon mere allegations or denials of his pleadings." Id. Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Id. Facts and inferences are to be viewed in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## II. ANALYSIS

Defendants move for summary judgment on all claims. (Doc. Nos. 97, 98.) The Court will address each claim in turn.

### A. Excessive Force – Section 1983

Plaintiffs claim that Defendants Kevin Ralph, Richard Fischer, Marcos Collins, Janae Krull, Sandra Carbajal, Billy Tennison, Dean Allen, Michael Lee, Jenny Martinson, Tamani Pugh, Aaron Brook, and Jovonni Silva (together the "Sheriff's Department Defendants") violated Phounsy's Fourth Amendment rights by using excessive force in their attempt to physically restrain Phounsy. (Doc. No. 50 ¶¶ 59-63.) The Sheriff's Department Defendants move for summary judgment, arguing their use of force was reasonable and, in any event, they are entitled to qualified immunity. (Doc. No. 97-1 at 13-23.) Because questions of material fact remain, the Court denies Defendants' motion for summary judgment on this claim. See Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2014) (en banc).

#### 1. Reasonable Force

The Ninth Circuit has instructed that "summary judgment should be granted sparingly in excessive force cases." Gonzalez, 747 F.3d at 795 (citing Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir. 2011)). "This principle applies with particular force where the only witness other than the officers was killed during the encounter." Id. This is precisely the situation presented here. Phounsy died after a prolonged struggle with officers involving multiple taser shocks, baton strikes, and physical blows. (Collins Depo. 52-55, 116:4-24; Krull Depo. 63, 70.) Defendants claim their force was reasonable in light of the situation, but Plaintiffs have come forward with evidence raising triable issues of material fact.

Viewed in the light most favorable to them, Plaintiffs have raised a triable issue of material fact as to whether the Sheriff's Department Defendants provoked Phounsy. When Deputies Krull and Collins first entered the home, Phounsy was guarded but compliant. (Krull Depo. 65:14-17.) Phounsy submitted to a pat down, but specifically

requested he not be handcuffed.  (Id. at 65:14-17.)  It was only after Krull and Collins attempted to handcuff Phounsy that he attacked them.  (Id. at 72:18-82:21; Collins Depo. 62:6-68:6.)  The Supreme Court recently reversed the Ninth Circuit's provocation rule.  County of Los Angeles, Calif. v. Mendez, 137 S.Ct. 1539, 1546-47 (2017).  In doing so, however, the Court did not say that provocation was irrelevant, only that it should be considered as part of the "totality of the circumstances."  Id. at 1546.  Thus, a triable question of fact remains as to whether Phounsy was provoked still defeats summary judgment.

Similarly, Plaintiffs have raised triable questions of fact regarding whether the Sheriff's Department Defendants used excessive force in restraining Phounsy once he initiated the aggression.  Plaintiffs' expert, Scott A. DeFoe, submitted an opinion detailing the force used by each of the Sheriff Department Defendants and why it was unreasonable.  (Doc. No. 108-8, DeFoe Report.)  For example, based on the records from Phounsy's detention, at least three deputies used their tasers on Phounsy but DeFoe is of the opinion that "a reasonable officer acting consistent with standard police practices would not have deployed his/her Taser X2 . . . [as it] detracted from the goal of handcuffing Mr. Phounsy with minimal force."  (Id.)  Similarly, DeFoe is of the opinion that various officers applied excessive force in striking Phounsy while they were attempting to handcuff him.  (E.g., id. at 15 ("a reasonable officer acting consistent with standard police practices would not have punched Mr. Phounsy 2-3 times in the right thigh as it was counter-productive and excessive.  In addition, it is my opinion the punches Deputy Tennison delivered detracted from the goal to handcuff Mr. Phounsy.")  Furthermore, DeFoe is of the opinion that Deputies Krull and Collins should have requested a Psychiatric Emergency Response Team (PERT) to respond to their location, based on the information they received from Mr. Kelley.  (Doc. No. 108-8 at 11.)

Based on the evidence put forward by Plaintiffs, viewing it in the light most favorable to them, a reasonable jury could find that the Sheriff's Department Defendants

3:15-cv-2692-H-MDD

1  used excessive force.  Gonzalez, 747 F.3d at 795; see also Hervey v. Estes, 65 F.3d 784,

2  791 (9th Cir. 1995) ("Unreasonable force claims are generally questions for a jury.").

3          2.  Qualified Immunity

4          Defendants argue that individual defendants are immune from Plaintiffs' § 1983

5  claims on account of qualified immunity.  Government officials are shielded from money

6  damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory

7  or constitutional right, and (2) that the right was "clearly established at the time of the

8  challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).  "To be clearly

9  established, [t]he contours of the right must be sufficiently clear that a reasonable official

10  would understand what [the official] is doing violates that right."  S.B. v. County of San

11  Diego, -- F.3d --, 2017 WL 1959984, *7 (9th Cir. 2017) (quoting Anderson v. Creighton,

12  483 U.S. 635, 640 (1987)) (internal quotation marks omitted) (alterations in original).

13  "We do not require a case directly on point, but existing precedent must have placed the

14  statutory or constitutional question beyond debate."  Id. (quoting Mullenix v. Luna, 136

15  S.Ct. 305, 308 (2015)).  "A plaintiff need not establish that the officers' exact behavior

16  has been declared unconstitutional, only that the unlawfulness of their actions was

17  apparent in light of preexisting law."  Silva v. City and County of Honolulu, 2017 WL

18  2801029, *13 (June 28, 2017 D. Hawai'i).

19          Here, the question of whether the Sheriff Deputy Defendants' conduct violated a

20  clearly established constitutional right turns on issues of fact that are in dispute.  See

21  Ortega v. San Diego Police Department, 669 Fed.Appx. 922, 923 (9th Cir. 2016) (holding

22  that the "district court correctly found the disputed facts are material to whether a

23  violation of a clearly established right occurred").  Triable issues remain as to whether

24  the Sheriff Deputy Defendants' used excessive force and a jury could find that officials

25  violated Phounsy's constitutional rights.  al-Kidd, 563 U.S. at 735.

26          In Alexander v. City and County of San Francisco, 29 F.3d 1355 (9th Cir. 1994),

27  the Ninth Circuit held that it could constitute excessive force when the police "storm[ed]

28  the house of a man whom they knew to be mentally ill."  Id. at 1366.  In reversing

summary judgment for defendants, the Ninth Circuit agreed with Plaintiff that her claim that "defendants used excessive force in creating the situation" that ultimately lead to the need to use force. Id. In so holding, the Ninth Circuit noted that officer's use of force must be commensurate with the need presented by the situation. Id. at 1367.

Subsequently, in Doerle v. Rutherford, 272 F.3d 1272, 1282-83, the Ninth Circuit further explained that "tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal." Id. "In the case of mentally unbalanced persons, the use of officers and others trained in the art of counseling is ordinarily advisable." Id. (citing Alexander, 29 F.3d at 1366). "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." Id. at 1281. As such, the Doerle court held that using nonlethal force, in that case a beanbag projectile, against a mentally ill individual where there was no need to immediately subdue him constituted excessive force. Id.; see also Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013) (summarizing Doerle holding). Plaintiffs argue that Phounsy was mentally ill at the time of the incident, as a result of being unable to sleep for multiple days. (Nguyen Depo. 43:13-24.) Furthermore, when Deputies Krull and Collins arrived on scene, a jury could find that there was no need to immediately subdue Phounsy. (See Collins Depo. 35:23-25 (no report of Phounsy being armed); 40:2-12 (no specific reason to think Phounsy was a threat).) Given the disputed facts, the Court declines to find qualified immunity at this time.

**B. Denial of Medical Care – Section 1983**

Plaintiffs claim that the Sheriff's Department Defendants, along with Aaron Bagley, Aaron Hackett, Aaron Do, Adam Daniels, Daniel Neow, Marc Poynter, and David Csik (together the "Paramedic Defendants") denied Phounsy medical care in violation of his constitutional rights. (See Doc. No. 50 ¶¶ 64-38.) As questions of fact

remain, the Court denies Defendants' motion for summary judgment as to the denial of medical care claim.

"Claims of failure to provide care for serious medical needs, when brought by a detainee [] who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment." Lolli v. County of Orange, 351 F.3d 410 (9th Cir. 2003); see also Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002) (reversed on other grounds) ("persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs"). To establish a denial of medical care claims, Plaintiffs must show Defendants were deliberately indifferent. Gibson, 290 F.3d at 1187. Deliberate indifference requires that an official know of and disregarded an excessive risk to a detainee's health and safety. Id. Plaintiffs have raised triable questions of fact as to whether Defendants were deliberately indifferent.[1]

Plaintiffs argue that Defendants were deliberately indifferent to Phounsy's serious medical risks when they failed to monitor his vital signs, failed to follow standard protocols, and failed to transition to soft restraints. (Doc. No. 107 at 18.) For example, after officers carried Phounsy out to the driveway, he was photographed. (Sperry Report at 2.) Plaintiffs' expert report states that, in the photograph, "[t]here is clearly cyanosis visible around his lips, indicating severe hypoxia" and Phounsy was unconscious at the time. (Id.) Therefore, triable issues of fact preclude summary judgment at this time. Similarly, Plaintiffs' medical expert also opined that paramedics "were prospectively aware of the known risk of cardiac arrest in maximum restraints" but did not take steps to address the risk, such as "reposition the patient to prevent cardiac arrest, apply oxygen, or use medical monitoring equipment." (Doc. No. 107-15 at 8.) Finally, Plaintiffs expert concludes that "[h]ad Mr. Phounsy been placed in soft restraints and re-positioned on his

---

[1] As triable issues of fact remain, the Court need not address the Paramedic Defendants' argument regarding whether a subjective or objective standard applies. (See Doc. No. 98 at 24.)

3:15-cv-2692-H-MDD

back before his cardiopulmonary arrest, it is even more likely than not that he would have arrived at the hospital without having sustained cardiorespiratory arrest." (Id.)  Although Defendants dispute these characterizations, triable issues of fact remain for the jury.

The Sheriff's Department Defendants argue that their obligations to provide medical care ceased when they summoned the necessary medical help, relying on Tatum v. City of San Francisco, 441 F.3d 1090 (9th Cir. 2006).  As Plaintiffs have raised triable questions of fact as to the Sheriff's Department Defendants' liability, the Court declines to grant summary judgment at this time.

The Paramedic Defendants claim that, even if they violated Phounsy's constitutional rights, they are entitled to qualified immunity.  It has long been settled that deliberate indifference is shown where an official "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or possible medical need." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (reversed on other grounds).  Given the disputed facts and expert testimony, qualified immunity is not warranted at this time.

## C. Monell Liability

Municipalities and local government units can be liable under § 1983.  Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978.)  To recover, Plaintiffs must show that a constitutional violation was caused by the municipalities' "policy, regulation, custom, or usage." Chewy v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994).  Plaintiffs assert that Phounsy's constitutional violations arose from (1) "a policy, custom, or practice of prioritizing law enforcement officers over those with more serious injuries," and (2) "a practice or custom of using excessive and unreasonable force on individuals in the midst of a mental health crisis." (See Doc. Nos. 107 at 20; 108-1 at 8-9.)  Triable questions of fact remain as to these issues so summary judgment is not appropriate at this time.

## D. Battery and Bane Act Claims

Plaintiffs claim that the Sheriff's Department Defendants tortiously battered Phounsy.  (Doc. No. 50 ¶¶ 74-80.)  Under California law, the analysis of a battery claim

1  against a law enforcement officer is the same as Plaintiffs' excessive force claim. See

2  Saman v. Robbins, 173 F.3d 1150, 1156 n.6 (9th Cir. 1999) ("Alfaorr's battery claim

3  must fail along with his § 1983 claim because we hold that no reasonable jury could have

4  found that Officer Kimball's actions were objectively unreasonable under the

5  circumstances.")  Numerous triable questions of fact remain as to whether the Sheriff's

6  Department Defendants used excessive force.  As such, the Court denies Defendants'

7  motion for summary judgment as to the battery claims.  The Court denies Defendants'

8  challenge to Plaintiffs' § 52.1 Bane Act claim for the same reason. See Cameron v.

9  Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) ("the elements of the excessive force claim

10 under § 52.1 are the same as under § 1983").

11      **E. Americans with Disabilities Act Claims**

12      Plaintiffs allege the Sheriff's Department Defendants violated Phounsy's rights

13 under the Americans with Disabilities Act ("ADA").  (Doc. No. 50 ¶¶ 87-93.)

14 Defendants argue that Plaintiffs' ADA claims fail because Phounsy does not satisfy the

15 definition of disability under the ADA.  (Doc. No. 97-1 at 27-28.)  Under the ADA, the

16 term "disability" means:

17      (A)    A physical or mental impairment that substantially limits one or more

18          life activities of such individual;

19      (B)    A record of such an impairment; or

20      (C)    Being regarded as having such an impairment.

21 42 U.S.C. § 12102.  The ADA provides that "[t]he definition of disability in this

22 chapter shall be construed in favor of broad coverage of individuals."  Id.

23 § 12102(4)(A).  "An impairment that is episodic or in remission is a disability if it

24 would substantially limit a major life activity when active."  Id. § 12102(4)(D).

25 Defendants claim that Phounsy was not disabled under the ADA, because his

26 behavior was caused by his illicit drug use, which is not covered.  See Thompson

27 v. Davis, 295 F.3d 890, 896 (9th Cir. 2002) ("the term 'qualified individual with a

28 disability' does not include an individual who is currently engaging in the illegal

11

use of drugs"). However, Plaintiffs have raised triable issues of fact regarding Phounsy's drug use.

Defendants claim that Krull and Collins were responding to a 9-1-1 call regarding a "subject under the influence of drugs." (See Doc. No. 97-1 at 9.) Plaintiffs, however, dispute that Phounsy was under the influence of drugs and claim he "had not done any drugs in the days immediately preceding" the incident. (Doc. No. 108-1 at 3.) In support, Plaintiffs have offered the testimony of Nguyen, who testified that that she had never seen Phounsy use drugs and attributed his strange behavior to a lack of sleep. (Nguyen Depo. 44:8-11.) Furthermore, Mr. Kelley testified that he told the 9-1-1 dispatcher that Phounsy had not done drugs recently. (Kelley Depo. 66:15-21.) These facts raise triable issues. As such, the Court denies summary judgment on Plaintiffs' ADA claims at this time.

Defendants challenge Plaintiffs' Unruh Act claims on the same basis as their ADA claims. (See Doc. No. 97-1 at 28.) For the same reasons, the Court denies summary judgment on Plaintiffs' Unruh Act claims.

### F. Negligence Claims

Defendants challenge Plaintiffs' negligence claims, arguing the Sheriff's Department Defendants' actions were objectively reasonable and, thus, cannot be the basis for negligence liability. (See Doc. No. 97-1 at 29-30.) Defendants rely on City of Simi Valley v. Superior Court, 111 Cal.App.4th 1077 (2003), which held a finding of objective reasonableness bars a state negligence action. Id. at 1084. However, Plaintiffs have raised triable issues of fact as to whether the Sheriff's Department Defendants' actions were objectively reasonable. As such, the Court denies summary judgment on the negligence claims.

### G. Negligent Hiring, Retention and Supervision Claim

In their complaint, Plaintiffs' assert a claim of negligent hiring, retention, and supervision against Sheriff Gore. (Doc. No. 50 ¶¶ 108-116.) Defendants move for summary judgment on this claim, arguing that Sheriff Gore owed Phounsy no such duty,

3:15-cv-2692-H-MDD

is not liable for acts of subordinates he did not direct or cooperate in, and is entitled to discretionary immunity. (Doc. No. 97-1 at 30-31.) Plaintiffs do not oppose Defendants' arguments with regard to Sheriff Gore. (See Doc. Nos. 107, 108.) Plaintiffs' failure to oppose Defendants' motion for summary judgment as to claims against Gore can constitute a waiver. See Celotex Corp., 477 U.S. at 330 (nonmoving party must come forward with evidence); Keer v. White, 156 F.3d 1237, *2 (9th Cir. 1998). In any event, however, the Court agrees with Defendants' arguments. "A chief of police is not liable in damages for the unlawful acts and omissions of the subordinates of the department unless he has directed such acts or personally cooperated." Oppenheimer v. City of Los Angeles, 104 Cal.App.2d 545, 549 (1951). And Plaintiffs have offered no facts to show that Sheriff Gore directed or personally cooperated in any acts towards Phounsy. Furthermore, Plaintiffs have offered no facts showing that Sheriff Gore breached any other duty towards Phounsy. As such, the Court grants summary judgment on the claims against Sheriff Gore. Celotex Corp., 477 U.S. at 330.

**H. Wrongful Death**

Plaintiffs assert a claim of wrongful death against all Defendants. (Doc. No. 50 ¶¶ 117-121.) The Paramedic Defendants move for summary judgment as to this claim, arguing that without a viable Fourteenth Amendment failure to provide medical care claim, the wrongful death claim fails. (Doc. No. 98 at 31-32.) As the Court has denied summary judgment on the failure to provide medical care claim, this argument fails.

**I. Substantive Due Process**

The Sheriff's Department Defendants move for summary judgment on Plaintiffs' substantive due process claim, arguing that Defendants' conduct did not shock the conscience because it did not involve a situation where actual deliberation was practical. (Doc. No. 97-1 at 31.) Citing Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010), they claim that Plaintiffs must thus prove that the Sheriff's Department Defendants had ulterior motives for their use of force against Phounsy. Id. This argument fails because there are triable issues of fact regarding whether there was time to deliberate. Deputy

13

Collins testified that after he arrived at Chanthaphanh's home, he waited by his car for Deputy Krull. (Collins Depo. 34:13-15.) Furthermore, after Deputy Krull arrived, they took time to speak to Mr. Kelley regarding the situation. (Id. 34:28-35:10.) During this time, there was nothing emergent that spurred them to enter the home and, thus, a reasonable jury could conclude there was an opportunity for deliberation.

The Sheriff's Department Defendants also argue that the substantive due process claim fails because Plaintiffs cannot prove causation. (Doc. No. 97-1 at 32.) But Plaintiffs' have put forward evidence a reasonable jury could rely on to conclude there was causation. For example, Plaintiffs' medical expert report states that Defendants could have taken steps to prevent Phounsy's cardiac arrest and "[h]ad Mr. Phounsy been placed in soft restraints and re-positioned on his back before his cardiopulmonary arrest, it is even more likely than not that he would have arrived at the hospital without having sustained cardiorespiratory arrest." (Doc. No. 107-15 at 8.) Thus, whether there was causation is a factual question for the jury.

### J. Intentional Infliction of Emotional Distress Claims

Plaintiffs' assert a claim of intentional infliction of emotional distress against Defendants Collins and Krull. (Doc. No. 50 ¶¶ 127-132.) Defendants move to dismiss this claim, arguing that Plaintiffs have not shown the requisite intent and Defendants' actions did not exceed the bounds of a civilized community. (Doc. No. 97-1 at 32-33.) Plaintiffs oppose, arguing they have raised triable issues of fact. The Court agrees with Plaintiffs.

To prove a claim of intentional infliction of emotional distress, Plaintiffs must show (1) extreme and outrageous conduct by the defendant with the intent of causing or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs suffered extreme emotional distress; and (3) actual and proximate causation. Hughes v. Pair, 46 Cal.4th 1035, 1051 (2009). Plaintiffs have offered evidence that Phounsy was repeatedly tased and beat with a baton in his own home. (Collins Depo. 52-55, 116:4-24; Krull Depo. 63, 70.; DeFoe Report, Doc. No. 108-8 at 13.) Plaintiffs also argue that

3:15-cv-2692-H-MDD

Defendants improperly restrained Phounsy and then failed to attend to medical condition. (Sperry Report at 2.) Whether these actions were intentional and fall outside the bounds of a civilized community are questions for the jury.

## **CONCLUSION**

For the foregoing reasons, the Court denies the Paramedic Defendants' motion for summary judgment. (Doc. No. 98.) The Court denies, in part, and grants, in part, the Sheriff's Department Defendants' motion. (Doc. No. 97.) The Court grants summary judgment for Sheriff Gore as to Plaintiffs' claims.

**IT IS SO ORDERED.**

DATED: August 17, 2017

_____
Hon. Marilyn L. Huff
United States District Judge

3:15-cv-2692-H-MDD