GERALD SINGLETON (SBN 208783)
TIMOTHY SCOTT (SBN 215074
BRODY A. McBRIDE (SBN 270852)
TRENTON G. LAMERE (SBN 272760)
SINGLETON SCHREIBER McKENZIE & SCOTT, LLP
450 A Street, 5th Floor
San Diego, CA 92101
Tel:    (619) 771-3473
Fax:   (619) 255-1515
gsingleton@ssmsjustice.com
tscott@ssmsjustice.com
bmcbride@ssmsjustice.com
tlamere@ssmsjustice.com

MARK F. FLEMING (SBN 165770)
LAW OFFICES OF MARK FLEMING
1470 Encinitas Blvd, #133
Encinitas, California 92024
Tel:    (619) 300-6202
mark@markfleminglaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.J.P., a minor, and K.P.P., a minor, individually, by and through their mother, LOAN THI MINH NGUYEN, who also sues individually and as successor in interest to her now deceased husband, Lucky Phounsy, and KIMBERLY NANG CHANTHAPHANH, individually,<br><br>  Plaintiffs,<br>vs.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>  Defendants. | Civil No. 15-cv-02692-H-MDD<br><br>Plaintiffs' Memorandum of Points and Authorities in Support of Motion In Limine to:<br><br>1. Exclude Evidence of Excited Delirium.<br><br>Date: February 8, 2021<br>Time: 10:30 a.m.<br>Courtroom: 15A |

1

## INTRODUCTION AND ISSUE PRESENTED

**A. Exclusion of evidence of Excited Delirium.**

Some of Defendants' witnesses speculate that Mr. Phounsy may have been affected by "Excited Delirium Syndrome" at the time of his arrest by officers in this case. But Defendants' own experts admit that Mr. Phounsy did not exhibit many symptoms of EDS, and these same experts declined to formally diagnose him with the condition. In the absence of any admissible expert-witness testimony, should evidence of EDS be excluded accordingly?

## DISCUSSION

**A. The Court should exclude all evidence, testimony, and argument regarding Mr. Phounsy suffering from "Excited Delirium Syndrome."**

**1. Background.**

At trial, Defendants may intend to offer testimony that Mr. Phounsy was allegedly affected by "Excited Delirium Syndrome" (EDS) at the time of his arrest in this case. For the reasons discussed below, the Court should exclude all evidence, testimony, and argument regarding EDS in this case.

Two of Defendants' medical experts mention EDS in their Rule 26 reports.[1]

Dr. Geller is Defendants' main proposed expert on EDS. His testimony should be excluded in its entirety for all the reasons described in Plaintiffs' motion *in limine* to that effect. Simply put, Geller believes that Plaintiff suffered from EDS

---

[1] A third expert, Dr. Vilke, conceded at his deposition that he did not intend to offer any opinion as to whether Mr. Phounsy was suffering from EDS. *See* Exhibit A, Excerpt from Deposition of Dr. Gary Vilke, at 103. ("Q: So do you offer any opinion as to whether or not Mr. Phounsy was suffering from excited delirium syndrome at the time of the incident? A: *I'm not planning to opine on that*.") (emphasis provided). Therefore, Dr. Vilke should be precluded from mentioning or discussing EDS at trial.

2

as a result of his alleged consumption of "bath salts," despite no evidence that Mr. Phounsy ever ingested "bath salts" on the day of the incident or at any time before then in his life. Indeed, another of Defendants' experts, Dr. Vilke, concedes that Geller's opinions about Mr. Phounsy's alleged use of "bath salts" are speculative and unsupported by the record in this case. *See* Exhibit A at 148.

The other is Dr. Campman. Dr. Campman concluded in his autopsy report that "decedent showed some of the major features of the Excited Delirium Syndrome, including psychosis, 'super strength' and a sudden cardiorespiratory arrest after a struggle and restraint." *See* Exhibit B, Autopsy Report by Dr. Steven Campman, at 3. But Campman admits in the same report that Mr. Phounsy did not show other alleged symptoms of EDS: He "*did not have a high body temperature, did not have an identified toxic concentration of stimulant drugs or a history of a naturally occurring psychosis, and his serum potassium concentration was not low when he got to the hospital.*" *Id*. (emphasis provided). Campman concludes by speculating that "it remains possible, however, that he was still experiencing toxic effects of the MDMA or of a synthetic cathinone or other stimulant drug that was not detected or tested for…" *Id*. Ultimately, Campman never explicitly concludes or opines that Mr. Phounsy was affected by or died from EDS. *See id*. at 1 (describing cause of death as "stimulant drug-related psychotic state"); Exhibit C, Excerpts from Deposition of Dr. Steven Campman, at 132 (Q: But you did not attribute his death to Excited Delirium Syndrome; correct? A: *I didn't use that term. I gave a descriptive cause of death that would—that could include that.* Q: But you chose not to; correct? A: Correct.") (emphasis provided).

**2. Lay witness testimony about EDS is inadmissible under Fed. R. Evid. 701.**

As an initial matter, no lay witnesses—including police officers and paramedics—should be allowed to testify about EDS. Pursuant to Fed. R. Evid. 701, "If a witness is not testifying as an expert, testimony in the form of an opinion

is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." In accordance with this Rule, lay witnesses in this case—including the deputies that interacted with Mr. Phounsy and the paramedics that arrived at the scene—should not be allowed to testify that Mr. Phounsy was allegedly affected by EDS. Such testimony would not be rationally based on their perception and would require specialized knowledge within the scope of Rule 702 for all the reasons discussed in the sections below. EDS, to the extent it can even be recognized as a valid diagnosis, is a condition far beyond the ken of a lay witness and any testimony attributing it to Mr. Phounsy would require a preliminary showing of expertise under *Daubert* and Rule 702. For these reasons, all lay witnesses should be precluded from testifying about EDS in this case.

**3. EDS evidence is inadmissible under Fed. R. Evid. 401 and 402.**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Here, evidence of EDS is irrelevant because none of Defendants' experts have validly diagnosed Mr. Phounsy as suffering from the purported condition. As previously mentioned, Geller based his EDS finding on Mr. Phounsy's alleged consumption of "bath salts," a claim that is entirely unsupported by the record in this case and which even Defendants' expert Dr. Vilke agrees is speculative at best. *See* Exhibit A at 148. Because Geller's EDS opinion relies on the flawed assumption that Mr. Phounsy ingested "bath salts," it is irrelevant and inadmissible.

As for Defendants' other experts, it is unclear whether either one of them found that Mr. Phounsy was affected by EDS. Dr. Vilke made no findings on the issue and made clear that he does not intend to offer an opinion on the presence of

EDS. And while Dr. Campman concluded that Mr. Phounsy allegedly showed some symptoms of EDS, he also acknowledged that Mr. Phounsy failed to exhibit many others key symptoms, including high body temperature, an identified toxic concentration of stimulant drugs, or a history of naturally occurring psychosis. *See* Exhibit B at 3. For that reason, Campman attributed Mr. Phounsy's death to an alleged "stimulant drug-related psychotic state" instead of to EDS. *Id*. at 1. Because none of Defendants' experts have made a diagnosis of EDS in this case, all testimony, evidence, and argument at trial about Mr. Phounsy allegedly suffering from the condition should be excluded.

### 4. Evidence of EDS is inadmissible under Fed. R. Evid. 702.

Pursuant to Fed. R. Evid. 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Here, none of Defendants' experts have been qualified as experts on EDS. None of Defendants' experts have stated that they have specialized knowledge on EDS. None of Defendants' experts have outlined or described the "reliable principles and methods" used by them to conclude that Mr. Phounsy suffered from EDS. None of Defendants' experts have defined EDS or stated how the "facts or data" in this case would support a diagnosis of EDS. In those circumstances, none of Defendants' experts should be permitted to testify about EDS in this case.

Further, a proper Fed. R. Evid. 702 foundation is particularly necessary because EDS has been increasingly described as "pseudoscience."[2] EDS is not

---

[2]   *See* https://www.washingtonpost.com/outlook/chokehold-police-excited-delirium/2020/07/17/fe907ec8-c6bc-11ea-b037-f9711f89ee46_story.html (last

recognized as a disorder by the American Medical Association, the American Psychiatric Association, the World Health Organization, or the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). The Court's "gatekeeping" obligations under *Daubert* require ensuring the reliability of expert testimony—"to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" (*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999))—and there is no basis upon which the Court can make that determination as to any EDS evidence in this case. Exclusion should result under Fed. R. Evid. 702 accordingly.

### 5. EDS evidence should be excluded under Fed. R. Evid. 403.

Finally, even if the Court does not exclude evidence of EDS on relevance and 702 grounds, exclusion is proper under Fed. R. Evid. 403. Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the probative value of any EDS evidence is minimal. Defendants' own experts admit that Mr. Phounsy did not exhibit many of the symptoms traditionally associated with EDS, including an identifiable presence of stimulant drugs in his system. The lack of indicia of EDS resulted in the autopsy report listing the cause of death as a "psychotic state." In these circumstances, allowing testimony of EDS would confuse the relevant issues, mislead the jury, and require extensive collateral litigation that would needlessly delay the trial. Exclusion is thus proper under Fed. R. Evid. 403.

---

visited January 8, 2021) ("[E]xcited delirium is pseudoscience. It's not a concept recognized by the American Medical Association or the American Psychiatric Association. It isn't a valid diagnosis; it's a misappropriation of medical terminology…")

# CONCLUSION

For all these reasons, the Court should grant Plaintiff's motions in limine and exclude all testimony, evidence, and argument regarding Excited Delirirum Syndrome.

                                           Respectfully submitted,

Dated: January 11, 2021        *s/ Timothy A. Scott*
                                           *s/ Brody A McBride*
                                           TIMOTHY A. SCOTT
                                           BRODY A. MCBRIDE
                                           Attorneys for Plaintiffs