1   RONALD LENERT, Senior Deputy (State Bar No. 277434)
     SYLVIA S. ACEVES, Senior Deputy (State Bar No. 267381)
2   **Office of County Counsel**
     1600 Pacific Highway, Room 355
3   San Diego, California 92101-2469
     Telephone: (619) 531-5805;  Fax: (619) 531-6005
4   E-mail: ronald.lenert@sdcounty.ca.gov; sylvia.aceves@sdcounty.ca.gov

5   Attorneys for Defendant COUNTY OF SAN DIEGO

6

7   MILDRED K. O'LINN (State Bar No. 159055)
     STEVEN J. RENICK (State Bar No. 101255)
     SCOTT WM. DAVENPORT (State Bar No. 159432)
8   **MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP**
     801 S. Figueroa St, 15th Floor
9   Los Angeles, California 90017-3012
     Telephone: (213) 624-6900; Fax (213) 624-6999
10  E-mail: mko@manningllp.com; sjr@manningllp.com; swd@manningllp.com

11  Attorneys for Defendant RICHARD FISCHER

12

13             **IN THE UNITED STATES DISTRICT COURT**

           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15  K.J.P., a minor, and K.P.P., a minor, | No. 15cv2692-H(MDD) |
| 16  individually, by and through their mother, | |
|      LOAN THI MINH NGUYEN, who also | |
| 17  sues individually and as successor in interest to her now deceased husband, | |
|      Lucky Phounsy, and KIMBERLY NANG | **DEFENDANTS' OPPOSITION TO** |
| 18  CHANTHAPHANH, individually, | **PLAINTIFFS' MOTIONS: (1) TO** |
| | **IMPEACH OPINIONS OF** |
| 19          Plaintiffs, | **DEFENDANTS' EXPERT WITNESSES** |
|          v. | **WITH EVIDENCE OF DEFENDANT** |
| 20  | **FISCHER'S OFFENSES & (2) FOR** |
|      COUNTY OF SAN DIEGO; San Diego | **CURATIVE INSTRUCTION** |
| 21  Sheriff WILLIAM GORE; RICHARD | **ADDRESSING DEFENDANTS'** |
|      FISCHER; KEVIN RALPH; MARCOS | **ATTEMPTS TO MISLEAD THE JURY** |
| 22  COLLINS; JANAE KRULL; SANDRA | **(Doc. 504)** |
|      (JANET) CARBAJAL; BILLY | |
| 23  TENNISION, III; DEAN ALLEN; | |
|      MICHAEL LEE; JENNY MARTINSON; | |
| 24  TAMANI PUGH; AARON BROOKE; | |
|      JOVONNI SILVA; CITY OF SANTEE; | |
| 25  AARON BAGLEY; AARON HACKETT; | |
|      AARON DO; ADAM DANIELS; | |
| 26  DANIEL NEOW; LAKESIDE FIRE | |
|      PROTECTION DISTRICT; MARC | |
| 27  POYNTER; DAVID CSIK, | |
|                Defendants. | |
| 28  | |

                                      15cv2692-H(MDD)

Defendants County of San Diego and Richard Fischer submit the following memorandum of points and authorities in opposition to the plaintiffs' "Motions: (1) To Impeach Opinions Of Defendants' Expert Witnesses With Evidence Of Defendant Fischer's Offenses & (2) For Curative Instruction Addressing Defendants' Attempts To Mislead The Jury", filed on Sunday, March 6, 2022 as Doc. 504.

The plaintiffs, by this motion, ask this Court to permit "plaintiffs to cross-examine defendants' experts regarding whether and how Fischer's 16 unreported uses of excessive force while on duty inform their opinions" and to "correct defense counsel's [alleged] misstatement of the law and explain that no rule prohibits defendants from eliciting those facts if they should choose to do so."  Doc. 504, page 15, lines 5-12.  There is no legal or factual justification for either of these requests, and accordingly the plaintiffs' motion should be denied in its entirety.

Further, as the defendants have already argued to the Court, evidence related to the allegations of 16 additional uses of excessive force by defendant Fischer is irrelevant to any of the issues raised by the claims made by the plaintiffs in the present trial, and accordingly should be excluded pursuant to Federal Rules of Evidence rule 402.

Further, as the defendants have also already argued to the Court, even if the evidence had any relevance, it should still be excluded pursuant to Federal Rules of Evidence rule 403, on the ground that its probative value is substantially outweighed by a danger of unfair prejudice to the defendants, of confusing the issues, of misleading the jury, of causing undue delay and wasting time, and of needlessly presenting cumulative evidence.

## 1. THERE IS NO LEGAL SUPPORT FOR THE PLAINTIFFS' REQUEST TO CROSS-EXAMINE TWO DEFENSE EXPERT WITNESSES REGARDING ALLEGATIONS OF 16 ADDITIONAL USES OF EXCESSIVE FORCE BY DEFENDANT FISCHER

The plaintiffs, by this motion, are asking this Court to allow the plaintiffs to cross-examine defense expert witnesses "Mr. Meyer and Dr. Vilke with evidence regarding

15cv2692-H(MDD)

Defendant Fischer's 4 felony assaults as well as his 16 additional uses of excessive force." Doc. 504, page 8, lines 2-3½. There is no necessity, or legal or factual basis, for this request.

The plaintiffs claim that they "should be permitted to cross-examine defense experts Mr. Meyer and Dr. Vilke about the facts underlying their opinions, including the extent to which those opinions relied on Defendant Richard Fischer's statements and whether they considered his, at least, 16 other instances of using excessive force under color of law, and repeated failure to report those excessive uses of force, when determining whether to rely on his version of the facts."  Doc. 504, page 8, lines 14-19; footnote omitted.  But the plaintiffs do not need to question either witness about the alleged 16 additional uses of excessive force by defendant Fischer in order to "cross-examine defense experts Mr. Meyer and Dr. Vilke about the facts underlying their opinions".

Plaintiffs' counsel merely needs to ask the witnesses "what facts did you rely on in forming your opinions."  If they do not mention these additional allegations, then they are acknowledging that they did not rely on those allegations in forming their conclusion. Thus, there is no need for the plaintiffs to make any mention of, or even allude to, these additional allegations in order to accomplish their expressed purpose of "cross-examin[ing] defense experts Mr. Meyer and Dr. Vilke about the facts underlying their opinions".

The plaintiffs further argue that:

> Both defense expert witnesses Mr. Meyer and Dr. Vilke relied on statements by Defendant Richard Fischer to reach their opinions. See e.g., R.T. (1st Trial) VII-63:8-14 (Meyer); R.T. (1st Trial) VII-196:25-197:1 (Vilke). In fact, as a matter of common sense, it would have been virtually impossible for the defense experts to bless Mr. Fischer's use of force without relying upon Mr. Fischer's explanation as to why and how he used force – only he could purportedly feel Mr. Phounsy moving.
>
> That means Plaintiffs' counsel must be permitted to cross-examine these experts about the bases for their opinions—including challenging the reliability of statements made by Defendant Richard Fischer, especially as they relate to the facts surrounding his use of force against Mr. Phounsy where he has admitted to using excessive force against numerous members of the public and failed to report those excessive uses of force.

Doc. 504, page 11, lines 12½ – 22½.

15cv2692-H(MDD)

The defendants certainly agree that the plaintiffs are entitled "to cross-examine these experts about the bases for their opinions", as was discussed above.  And the defendants agree that the plaintiffs can "challeng[e] the reliability of statements made by Defendant Richard Fischer" on which the defense experts relied.  But the plaintiffs are wrong in assuming that that challenge can or should be made through the cross-examination of the defendants' expert witnesses.

The issue here is not what the experts believed.  The issue is what information they relied upon in coming up with their opinions.  It is up to the jury to decide what weight should be given to those opinions, and that decision can be based, at least in part, on the jury's conclusion as to the accuracy of the information on which those experts relied in reaching their conclusions.  In other words, the question for the jury is whether the information Fischer gave (directly or indirectly) to the experts was accurate, not whether the experts should, or should not, have believed in its accuracy.

The district court in *United States ex rel. Poong Lim/Pert Joint Venture v. Dick Pac./Ghemm Joint Venture,* 2006 U.S. Dist. LEXIS 19281 (D. Alaska Mar. 2, 2006; No. 3:03-cv-00290-JWS) discussed this issue.

> Poong Lim makes a multi-prong attack on the conclusions reached by Dr. Tide and Jens in the reports submitted and at their depositions. Therein lies the problem with the motions at bar. The motions at bar seek to exclude the testimony of Dr. Tide and Jens by attacking the reports and deposition testimony. Distilled to its essential elements Poong Lim's arguments are that the opinions are flawed because neither Dr. Tide nor Jens, in the opinion of Poong Lim, verified much of the information upon which each based his conclusions and some of that information or data was either incorrect, based upon sources that were inadmissible, or did not consider the impact if the facts differed. In particular, Poong Lim argues that the opinions are based upon an uncritical acceptance (or "rubber stamping") of the position asserted by DPG as to the facts of the case without consideration of the facts as viewed from the perspective of Poong Lim. The problem with Poong Lim's argument is at least twofold. First, testimony of an expert need not be based upon facts within the expert's personal knowledge and is commonly based upon facts assumed to be true (hypothetical questions). Second, experts may testify based upon controverted facts or one party's or the other's version of the facts. Indeed, it would be error for the court to exclude the testimony of an expert on the grounds that it is based upon one version of disputed facts. That an expert

- 4 -

15cv2692-H(MDD)

relied upon a particular source for his opinion is not evidence of the truth of that source.

To the extent Poong Lim seeks to challenge the correctness of the testimony of DPG's experts, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses.  Indeed, the Supreme Court stated in *Daubert:* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Id.* at *7-*9; footnotes omitted.

The district court's analysis relied on the opinions of a number of courts (identified in the omitted footnotes), including the Supreme Court's decision in *Williams v. Illinois,* 567 U.S. 50, 78 (2012), in which the Court explained that under FRE rule 703:

"[B]asis evidence" that is not admissible for its truth may be disclosed even in a jury trial under appropriate circumstances. The purpose for allowing this disclosure is that it may "assis[t] the jury to evaluate the expert's opinion." [Citation.]  The Rule 703 approach, which was controversial when adopted, [footnote] is based on the idea that the disclosure of basis evidence can help the factfinder understand the expert's thought process and determine what weight to give to the expert's opinion. For example, if the factfinder were to suspect that the expert relied on factual premises with no support in the record, or that the expert drew an unwarranted inference from the premises on which the expert relied, then the probativeness or credibility of the expert's opinion would be seriously undermined. The purpose of disclosing the facts on which the expert relied is to allay these fears – to show that the expert's reasoning was not illogical, and that the weight of the expert's opinion does not depend on factual premises unsupported by other evidence in the record – not to prove the truth of the underlying facts.

The district court also cited to *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1390, 1391-1392 (Fed. Cir. 2003), in which the defendants contended that the district court, by allowing the plaintiff's damages expert, Edward Fiorito, to testify, had failed to perform its gatekeeper duty as required under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589-592 (1993).  The Court of Appeals disagreed.

The defendants contend that the district court in this case failed to perform its gatekeeping duties when it allowed Fiorito to testify. Specifically, the defendants argue that Fiorito based his opinion on inaccurate facts because he relied on the statements of others and did not undertake an independent

15cv2692-H(MDD)

investigation of the feedlot industry or personally review the parties' financial records. …

First, we disagree with the defendants' assertion that Fiorito's testimony did not satisfy subpart (1) of Rule 702, which provides that expert testimony must be "based upon sufficient facts or data." Defendants confuse the requirement for sufficient facts and data with the necessity for a reliable foundation in principles and method, and end up complaining that Fiorito's testimony was not based on "reliable facts." The parties disputed many of the facts relevant in determining a reasonable royalty, the foremost being whether the defendants' modified systems would have been available at the time of a hypothetical royalty negotiation and whether the defendants promoted sales of their other products by distributing their infringing systems to feedlots free of charge or at a substantial loss. When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one exper''s testimony. We find the Advisory Committee note to Rule 702 instructive in this regard:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

See also *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249-50 (5th Cir. 2002) (holding that jury was entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which expert relied were accurate). The Advisory Committee note further counsels that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Indeed, as the Supreme Court stated in *Daubert:* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595.

*Micro Chem., supra,* 317 F.3d at 1392.

The bottom line is that the plaintiffs can't challenge defendant Fischer's credibility by asking the defendants' expert witnesses to offer their personal opinions as to Fischer's credibility. That is a question that belongs solely to the jury.

So if the plaintiffs want to argue to the jury that the defendants' experts based their opinions on inaccurate information – i.e. the statements made by defendant Fischer – then their burden is to independently produce evidence at the trial to challenge the accuracy of

- 6 -

15cv2692-H(MDD)

that information, not to attempt to backdoor that argument to the jury through their cross-examination of the defendants' experts.*

## 2.   THE PLAINTIFFS ARE WRONG THAT THE ALLEGATION OF 16 ADDITIONAL USES OF EXCESSIVE FORCE BY DEFENDANT FISCHER IS ADMISSIBLE TO CORRECT ALLEGED "FACTUAL MISREPRESENTATIONS MADE ON THE RECORD TO THE JURY"

The plaintiffs argue in their motion that "[e]ven if Mr. Fischer's excessive force against sixteen other citizens was not admissible to impeach the experts' opinions, which it is, his many prior uses of excessive force would be admissible because defendants have opened the door by misleading the jury." Doc. 504, page 11, line 26½ - page 12, line 1. Just as the plaintiffs were wrong about the information being "admissible to impeach the experts' opinions" (see Section 1 above), they are equally wrong about it being admissible because defendants have allegedly "opened the door by misleading the jury."

The plaintiffs cite four cases as supposedly supporting that contention, but notably, all four of those cases are criminal prosecutions. Doc. 504, page 12, lines 1-19. That is a critical distinction, as was made clear by the Ninth Circuit in the very first case cited by the plaintiffs: *United States v. Osazuwa,* 564 F.3d 1169 (9th Cir. 2009). (See Doc. 504, page 12, lines 1-4.) The plaintiffs quote two sentences from that opinion, but pointedly leave out the first six words of the first sentence. The full quotation is as follows:

> ***In a criminal prosecution, the government*** may introduce otherwise inadmissible evidence when the defendant "opens the door" by introducing potentially misleading testimony. [Citation.] A defendant may open the door by minimizing, or attempting to explain away, a prior conviction.

---

   *  The plaintiffs have not argued that they can offer the allegations of 16 additional uses of excessive force by defendant Fischer directly into evidence in order to attack his credibility. But if they were to attempt to do so, it would violate Federal Rules of Evidence rule 608(b), which provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."

15cv2692-H(MDD)

*Id.* at 1175; emphasis added.  The present case, of course, is not a criminal prosecution, and the party proposing to invoke this rule is not the government.

The plaintiffs, in quoting from the second case they cited – *United States v. Miller,* 673 F.3d 688, 697 (7th Cir.2012) – again removed language from the quote that highlighted that what was at issue was the application of a rule relevant to criminal prosecutions.  The quotation presented by the plaintiffs was as follows:

> other-acts evidence "becomes more relevant, and evidence tending to prove [it] becomes more probative, when the defense actually works to deny [it], joining the issue by contesting it".

Doc. 504, page 12, lines 5-7; parentheses omitted.  The complete quotation from the opinion is as follows (emphasis added):

> Similarly, while intent is at least formally relevant to all specific intent crimes, *intent* becomes more relevant, and evidence tending to prove *intent* becomes more probative, when the defense actually works to deny *intent,* joining the issue by contesting it.

Language the plaintiffs do quote from the *Osazuwa* opinion points out another critical difference between that case and this one.  The *Osazuwa* decision allows the government to "introduce otherwise inadmissible evidence when the defendant 'opens the door' by introducing potentially misleading *testimony.*"  See Doc. 504, page 12, lines 1-2. In each of the four cases cited by the plaintiffs in their motion, the rule was applied to respond to *testimony* offered by the criminal defendant.

That is not the case here.  According to the plaintiffs themselves, "[h]ere, defendants have opened the same door by repeatedly *arguing* …"  Doc 504, page 12, line 20; emphasis added.  The plaintiffs complain about what "both defendants' counsel have *told* the jury …"  Doc. 504, page 12, line 27 – page 13, line 1; italics omitted, other emphasis added.

The plaintiffs have not suggested that Mr. Fischer, or any other defense witness, has offered any false or misleading testimony.  Rather, the plaintiffs are complaining about the interpretation they claim that defense counsel is putting on that testimony.  Even if that

- 8 -

15cv2692-H(MDD)

were happening, it would merely be argument, not evidence, and plaintiffs' counsel is free to provide opposing argument to the jury at the appropriate time.

The Ninth Circuit, in the *Osazuwa* opinion, addressed this very point in its discussion of an earlier Ninth Circuit decision – *United States v. Sine,* 493 F.3d 1021 (9th Cir. 2007).

> In *Sine,* we held that a defendant's accurate testimony did not open the door to the introduction of otherwise inadmissible evidence by the government. *Id.* The defendant had stated in his direct testimony that a judge "'wrote up some bad things about [him]'" in an order from a prior criminal contempt proceeding that was inadmissible in his criminal fraud trial. *Id.* On cross-examination, the government questioned the defendant using specific phrases that appeared in the judge's order, such as "chicanery," "mendacity," and "rife with deceit." *Id.* at 1029. We held that the defendant's "limited" accurate testimony about the judge's order "was insufficient to open the door to the government's otherwise impermissible references to the order, as [the defendant] did not introduce an inaccurate portrait of the order itself." *Id.* at 1037. We rejected the government's argument that the defendant's testimony had painted a picture of "'selflessness and hope,'" thereby opening the door to use of the inadmissible order. *Id.* "Presenting a theory of the case that can be effectively rebutted by otherwise-inadmissible evidence," we held, "does not by itself open the door to using such evidence; only partial, misleading use of the evidence can do so." *Id.* at 1038.

*United States v. Osazuwa, supra,* 564 F.3d at 1176.

Finally, as to almost all of the statements by defense counsel about which plaintiffs are now complaining, there was no contemporaneous objection, nor any request that the court instruct the jury to disregard those statements or request for any other sort of curative instruction. The plaintiffs only objected to three of the statements they discuss. This Court sustained one objection, "noted" another, and stated "We'll take it up later" as to the third. See Trial Transcript, I-147:18-20, I-146:22-25, and II-23:19-21. But even as to these three statements, the plaintiffs failed to request that the court instruct the jury to disregard those statements, or request any other sort of curative instruction at the time.

The plaintiffs cannot complain of the alleged effect on the jury of defense counsel's statements when they did nothing to attempt to ameliorate that effect at the time it allegedly occurred. The plaintiffs cannot simply sit back, allow these supposed improper statements to accumulate, and then demand relief based on the claimed combined effect of these

15cv2692-H(MDD)

statements on the jury.

Accordingly, for these multiple reasons, there is no merit for the plaintiffs' claim that the allegation of 16 additional uses of excessive force by defendant Fischer is admissible to correct alleged "factual misrepresentations made on the record to the jury".

### 3.    THERE IS NO MERIT TO THE PLAINTIFFS' DEMAND FOR A "CURATIVE INSTRUCTION"

The final request made by the plaintiffs in their current motion is for "a curative instruction [to] be given to correct Defendant Fischer's counsel's misrepresentation to the jury that no one can talk about the facts of Mr. Fischer's prior conviction". The plaintiffs are referring to the following comment made by defense counsel during opening argument (see Doc. 504: page 1, footnote 1; page 2, lines 20 – 24½; and page 14, lines 12-14):

> That criminal history is not admissible to leverage as a habit or custom of Richard Fischer. In fact, counsel for all the parties are limited to very specific information with regard to those charges. We're not permitted to even explain to you how those four felonies significantly differ from the Phounsy incident. We're not going to go into that at all.

Trial Transcript, I-147:12-17.

But, as plaintiffs' counsel acknowledges, they immediately "objected and the Court sustained the objection." Trial Transcript, I-147:18-20. See Doc. 504, page 2, line 24½. But what the plaintiffs didn't do at that time was request that the court instruct the jury to disregard those statements, or request any other sort of curative instruction – such as the one they are now asking for. The plaintiffs have not even attempted to explain why they did not make that request at that time, or how it is appropriate to suddenly demand such a curative instruction nearly a week after their objection was sustained.

Neither of the two cases cited by the plaintiffs in their motion supports such a delayed request. The Supreme Court merely stated that "[a]rguments of counsel which misstate the law are **subject** to objection and to correction by the court. [Citation.]" *Boyde v. California,* 494 U.S. 370, 384 (1990); emphasis added. The Court in no way suggested

15cv2692-H(MDD)

that the objecting party could delay in making a request for "correction by the court."  The plaintiffs here failed to timely make such a request.

As the district court noted in a different context in *Brown v. Carey,* 2007 U.S. Dist. LEXIS 47788, at *12-13 (E.D. Cal. July 2, 2007), a timely "request [for] an admonition … could have corrected the misstatement and any negative impact therefrom."  For the Court to issue at this time the sort of instruction the plaintiffs are now demanding, so long after the statement was made to the jury by defense counsel, would put undue and unfair emphasis on the claimed impropriety of this single comment uttered during the course of opening statement.  The plaintiffs demand for this "curative instruction" should therefore be rejected by the Court.

## CONCLUSION

Accordingly, for all these reasons, the plaintiffs' motion should be denied in its entirety.

DATED:  March 8, 2022

**OFFICE OF COUNTY COUNSEL**

By:  ___*/s/  Ronald Lenert*_____
RONALD LENERT, Senior Deputy
Attorneys for Defendant
COUNTY OF SAN DIEGO

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:  ___*/s/  Mildred K. O'Linn*_____
MILDRED K. O'LINN
STEVEN J. RENICK
SCOTT WM. DAVENPORT
Attorneys for Defendant
RICHARD FISCHER

- 11 -

15cv2692-H(MDD)