UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.J.P., a minor, by and through their mother, LOAN THI MINH NGUYEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.:  15cv2692-H (MDD)<br><br>**ORDER APPROVING MINORS' COMPROMISE WITH COUNTY DEFENDANTS [ECF NO. 620] AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO FILE DOCUMENTS UNDER SEAL [ECF NO. 618]** |

Pending before the Court is "Plaintiffs' [Unopposed] Petition to Approve Compromise with County Defendants" ("Petition") filed on January 19, 2023 by Plaintiff Loan Thi Minh Nguyen, on behalf of herself and as parent and next friend of minor plaintiffs K.J.P. and K.P.P. ("Minor Plaintiffs," and collectively, "Plaintiffs").  (ECF No. 620; see also ECF No. 625.)  Plaintiffs have also filed a "Motion for Order to File Documents Under Seal," requesting to seal limited portions of their motion, attachments explaining the Minor Plaintiffs' structured settlements, and the declaration of Loan Thi Minh Nguyen, which Defendants County of San Diego and Richard Fischer ("County Defendants") opposed.  (ECF No. 618-19; see also ECF Nos. 624, 626.)   The undersigned was assigned to address the minors' compromise.  (ECF No. 621.)  Plaintiffs and "County Defendants" filed a "Consent to Proceed Before Magistrate Judge to Decide Minor

Plaintiffs' Motion to Approve Compromise with County Defendants" on January 24, 2023.  (ECF No. 623.)  The Honorable District Judge Marilyn Huff approved Judge Berg's exercise of jurisdiction for entry of an order on Plaintiffs' Petition on February 24, 2023.  (ECF No. 627.)

On February 27, 2023, the Court held a telephonic Status Conference with counsel for the parties, before requesting further briefing to address the requirements of California Probate Code §§3600, et seq. and California Rule of Court 7.955(b).  (ECF No. 629.)  Plaintiffs filed supplementary briefing the same day.  (ECF No. 630.)

After reviewing the unopposed motion to approve Minor Plaintiffs' compromise with County Defendants and the supplementary briefing in support thereof, and for the reasons discussed below, the Court **APPROVES** the settlement.   After reviewing Plaintiffs' Motion for Order to File Documents Under Seal [ECF No. 618], County Defendants' opposition thereto [ECF No. 624], and Plaintiffs' Reply [ECF No 626], the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion.

## I.   BACKGROUND

**A.   Factual Background**

The Court takes this summary of the facts underlying this case from the District Court's August 17, 2022 Order on County Defendants' post-trial motions:

> This case arises out of the death of Lucky Phounsy, a thirty-two-year-old husband, son, and father of two small children.  On April 13, 2015, Mr. Phounsy experienced a mental health crisis.  Mr. Phounsy called 9-1-1 for help, and San Diego County Sheriff's deputies responded.  During the approximately forty-five-minute altercation that followed between Mr. Phounsy and the sheriff's deputies, Mr. Phounsy was tased multiple times, punched, handcuffed, put in maximum restraints, strapped to a gurney, and had prolonged pressure applied to his head and torso. [Citations.]  While in the ambulance to the hospital, Mr. Phounsy went into cardiac arrest and coded. [Citations.]  Mr. Phounsy remained in a coma at the hospital for several days until his family made the decision to remove him from life support. [Citation.]  Following Mr. Phounsy's death, Mr. Phounsy's wife, Loan Nguyen, and their two children, K.J.P. and K.P.P., filed the present action alleging, among other claims, that San Diego County Sheriff deputy

Defendant Fischer used excessive force against Mr. Phounsy resulting in his death and that the County failed to train its deputies under <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 691 (1978).

(ECF No. 582 at 2-3.)

## B.    <u>Procedural History</u>

Since Plaintiffs initially filed this case on December 1, 2015, (<u>see</u> ECF No. 1), this case has been heavily litigated.  (<u>See</u> Docket.)  The Court will not recite the entire docket of over 600 entries, which initially included additional parties.  (<u>See</u> Docket.)  However, a summary of the procedural history involving Plaintiffs as related to County Defendants follows.  County Defendants answered on January 7, 2016.  (ECF No. 18.)  The parties participated in an unsuccessful Early Neutral Evaluation Conference, and then an initial Case Management Conference on July 12, 2016.  (ECF No. 36.)

After approximately eleven months of discovery, County Defendants[1] filed a Motion for Summary Judgment on June 22, 2017.  (ECF No. 97.)  Though the District Judge dismissed Plaintiffs' negligent hiring, retention, and supervision claim against the San Diego Sheriff, she denied summary judgment as to all other claims on August 17, 2017.  (ECF No. 115.)  County Defendants filed a Notice of Interlocutory Appeal to the Ninth Circuit the next day.  (ECF No. 118.)  Despite Plaintiffs' desire to continue to trial, the Court ultimately granted County Defendants' and others' request to stay the case pending resolution of interlocutory appeals to permit the Ninth Circuit to review the defendants' qualified immunity claims.  (ECF No. 148.)  The Ninth Circuit remanded the case, instructing the District Court to conduct an individualized assessment for each defendant to assess entitlement to qualified immunity.  (ECF Nos. 156-57.)

---

[1] In addition to County Defendants who have now reached the settlement under review the Plaintiffs, at the time of this Motion for Summary Judgment, the Sheriff himself and several additional individual Sheriff's Department employees were defendants and joined this motion.  (<u>See</u> ECF No. 97.)

The San Diego County defendants then in the case filed a renewed Motion for Summary Judgment on March 11, 2019, raising individualized qualified immunity arguments.  (ECF No. 161.)  On April 12, 2019, after conducting a detailed and individualized qualified immunity analysis, the District Court found triable issues of material fact remained as to many of Plaintiffs' claims, including Plaintiffs' current claims against Defendant Fischer and the County of San Diego.  (ECF No. 171.)

County Defendants again filed a Notice of Interlocutory Appeal.  (ECF No. 173.)  Finding that the appeal involved factual disputes, the Ninth Circuit dismissed the appeal for lack of jurisdiction.  (ECF No. 231.)  The parties attended another settlement conference on January 6, 2021 and were unable to settle the case.  (ECF No. 256.)

After extensive preparation and litigation of motions in limine, (see ECF Nos. 257-341), Plaintiffs' case against County Defendants[2] proceeded to trial for ten days, from August 23, 2021, to September 3, 2021.  (ECF Nos. 342-63.)  The jury at the first trial was ultimately unable to reach a verdict.  (ECF No. 363.)  In the ensuing months, the parties litigated County Defendants' unsuccessful motions for judgment as a matter of law.  (See ECF No. 481.)  The Court also addressed Defendants' previously unknown discovery violations.  (See ECF No. 582 at 43-54 (summarizing County of San Diego's discovery violations and the Court's treatment thereof).)

Plaintiffs' case against County Defendants was tried a second time to jury over eleven days from March 2 to March 16, 2022.  (See ECF Nos. 495-526.)  The trial proceeded on five claims: Plaintiff Nguyen, as Mr. Phounsy's successor in interest, brought the following four claims: (1) excessive use of force pursuant to 42 U.S.C. 1981

---

[2] At the time of the first trial, there was an additional plaintiff and there were multiple individual sheriff's department employee defendants, but before the second trial the parties jointly moved to dismiss all claims brought by Plaintiff Kimberly Nang Chanthaphanh and against Defendants Sandra Carbajal, Billy Tennison III, Dean Allen, Michael Lee, Jenny Martinson, Tamani Pugh, Aaron Brooke, and Jovonni Silva.  (ECF No. 391.)  Prior to the parties filing of this joint motion, the District Court had noted that "simplification of the issues would potentially help the Court, the parties, and the next jury in resolving the remaining issues."  (ECF No. 390.)

15cv2692-H (MDD)

against Defendant Fischer; (2) a Monell claim against San Diego County for failure to adequately train; (3) a California Bane Act claim against Defendant Fischer; and (4) negligence against Defendant Fischer.  (ECF No. 493 at 2-10.)  A fifth and final claim for wrongful death was brought by Plaintiffs, including Minor Plaintiffs, against Defendant Fischer and San Diego County.  (Id. at 10-11.)  In the event the jury found Defendants liable for punitive damages, the Court bifurcated the determination of the amount of any punitive damages award.  (Id. at 78-79.)

At the conclusion of the first part of the trial, the jury found unanimously for Plaintiffs on all claims.  (ECF No. 525, 532.)  The jury awarded Mr. Phounsy's successor in interest, Plaintiff Nguyen, $5 million for his mental, physical, and emotion pain and suffering, comprised of $2 million for the period before he was placed in the ambulance, and $3 million from the time after and until his death.  (Id. at 7.)  For Plaintiffs' noneconomic damages due to loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance, the jury awarded Plaintiffs, including Minor Plaintiffs, $80 million.  (Id.)  Plaintiffs and Defendant Fischer stipulated to $10,000 as an award of punitive damages.  (ECF No. 543 at 29-30.)

Following the trial, County Defendants filed both a motion for judgment as a matter of law and a new trial motion.  (ECF Nos. 551, 552.)  The Court found substantial evidence supported the jury's findings in Plaintiffs' favor on all claims, and therefore denied the motion for judgment as a matter of law.  (ECF No. 582 at 8-36.)  Relevant here, the Court found Defendant Fischer had qualified immunity for his actions prior to the ambulance, which precluded the $2 million award for pre-ambulance pain and suffering, and found that the $80 million loss of companionship damages were so excessive that they likely reflected a desire to punish Defendants or to compensate Plaintiffs for their emotional pain.  (Id. at 67-73.)  After concluding that it could not determine a fixed amount for remittitur, the Court granted Defendants' motion for a new trial on non-economic wrongful death damages.  (Id. at 73.)

15cv2692-H (MDD)

The parties attended another unsuccessful settlement conference on September 28, 2022.  (ECF No. 606.)  Plaintiff filed a Motion for Reconsideration on September 14, 2022, arguing that: (1) Plaintiff Nguyen's Monell claim entitled her to recover against the County for Mr. Phounsy's pre-ambulance pain and suffering; (2) Mr. Phounsy should be able to offer evidence regarding economic damages at any retrial.  (ECF No 595.)  Both sides filed motions in limine in anticipation of a trial on wrongful death damages.  (See ECF Nos. 598-605.)  Plaintiffs and County Defendants reached a settlement of their claims prior to receiving a ruling on any of these motions, which were subsequently denied as moot.  (See ECF Nos. 608, 611-12.)  Plaintiffs now ask the Court to approve the settlement as it applies to Minor Plaintiffs, who are now eight and nine-years-old.  (ECF No. 620.)

**C.      Proposed Settlement Terms**

As set forth in Plaintiffs' Motion for Order to Approve Minors' Compromise with County Defendants, the total settlement amount of all claims between Plaintiffs and County Defendants is $12 million.  (ECF No 620 at 3.)  This includes the $3 million award left intact from the second jury trial, and the stipulated $10,000 punitive damages award against Defendant Fischer, and an agreement that the parties will bear their own fees and costs.  (ECF No. 620.)  Of the $12 million, $4 million will be evenly split between Minor Plaintiffs.  (ECF No. 619-1 at 3.)  No litigation costs will be deducted from Minor Plaintiffs' portion of the settlement.  (Id. at 3.)  However, 40% of Minor Plaintiffs' awards will be paid in attorneys' fees to defense counsel, Singleton Schreiber, LLP, consistent with the retainer agreement.  (Id.)

The $1.2 million net award to each Minor Plaintiff after payment of attorneys' fees will be deposited into an annuity and paid to Minor Plaintiffs via structured, periodic monthly and annual payments and certain lump sums at milestone dates.  (ECF No. 619.)  These payments will begin at the age of 18, and are guaranteed to continue at least until the age 55.  (Id.)  The detailed schedule of the annuity payments can be found in Attachments A and B [ECF No. 619] and will not be repeated here.

Plaintiffs claim that the proposed compromise "is fair and reasonable in light of Plaintiffs' claims and average recovery in similar cases." (ECF No. 620 at 5.) County Defendants are not opposed. (ECF No. 625.)

## II.    LEGAL STANDARD

Civil Local Rule 17.1 governs settlements for minors. It provides that, "[n]o action by or on behalf of a minor . . ., or in which a minor . . . has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." See Civ.L.R. 17.1(a). It further mandates that, "[a]ll settlements and compromises must be reviewed by a magistrate judge before any order of approval will issue." Id. This rule implements courts' special duty to safeguard the interests of minor litigants in the context of civil settlements. See Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011); Fed. R. Civ. P. 17(c). The Ninth Circuit has held this duty obliges the court to "conduct its own inquiry to determine whether the settlement serves the best interest of the minor." Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)); see also Salmeron v. United States, 724 F.2d 1357, 1353 (9th Cir. 1983) ("a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, . . . even if the settlement has been recommended or negotiated by the minor's parents or guardian ad litem.").

District courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181–82. Courts should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." Id. at 1182 (citing Dacanay, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery

15cv2692-H (MDD)

in similar cases, the district court should approve the settlement as proposed by the parties." Id.

Notably, the Ninth Circuit expressly limited Robidoux to "cases involving the settlement of a minor's federal claims." Id. at 1179 n.2 (emphasis added). Where a settlement involves state law claims, district courts generally apply state law rather than the Robidoux framework. See DeRuyver v. Omni La Costa Resort & Spa, LLC, No. 17-cv-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); J.T. v. Tehachapi Unified Sch. Dist., No. 16-cv-01492-DAD-JLT, 2019 WL 954783, at *2 (E.D. Cal. Feb 27, 2019); A.M.L. v. Cernaianu, LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014). Noting that Robidoux and the present case both involved state and federal law claims, Plaintiffs assert that Robidoux should apply exclusively to the Court's review here. (ECF No. 630 at 2 n.2. (citing Robidoux v. Wacker Family Trust, No. CIV.S-06-2334 LKK/DAD, 2009 WL 1531785, at *1 (E.D. Cal. May 29, 2009)). However, this case is distinct from the underlying Robidoux case where the minor plaintiffs' claims were grounded in both state and federal housing laws, because Minor Plaintiffs' sole cause of action is wrongful death pursuant to California law. (See ECF No. 582 at 36 (describing the basis in California law for Plaintiffs' wrongful death claim.)

To ensure Minor Plaintiffs' interests are safeguarded, the Court will review the settlement under the state standard, which focuses on "the best interests of the minor." Anderson v. Latimer, 166 Cal. App. 3d 667, 676 (1985); see also Pearson v. Superior Court, 202 Cal. App. 4th 1333, 1338 (2012) (explaining that requiring court approval "allows the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest"). The California Probate Code provides the applicable statutory scheme for compromises involving minors. See Cal. Prob. Code. §§ 3600 et seq. Under California law, the court has broad discretion "to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." Goldberg v. Superior Court, 23 Cal. App. 4th 1378, 1382 (1994). To ensure all relevant factors are considered, the Court will also

15cv2692-H (MDD)

consider the Robidoux standard of determining whether the net recovery is "fair and reasonable."  638 F.3d at 1181.

### III.    DISCUSSION

**A.    Approval of Minors' Compromise**

**1.    Proposed Settlement is Fair, Reasonable, and in the Minors' Best Interests**

Based on a review of the extensive record, Plaintiffs' motion requesting approval, and applicable law, the Court finds that the terms of the settlement are fair, reasonable, and in the best interests of Minor Plaintiffs.  In finding that $80 million in noneconomic wrongful death damages was excessive, the District Judge reviewed the evidence presented at trial regarding the value of "Plaintiffs' loss of Mr. Phounsy's comfort, society, and protection," as well as the comparator cases submitted by the parties before concluding with a "'firm conviction' that that the jury's $80 million [noneconomic damages] award, divorced from any economic damages, was likely 'the result of passion or prejudice' and 'grossly excessive.'"  (ECF No. 582 at 71-73 & n.20.)  As Plaintiffs explain, the value of Plaintiffs' claims was hotly contested, and the proposed compromise falls fairly within the opposing positions taken by the parties in relation to County Defendants' new trial motion.  (See ECF No.  620 at 6.)  On one hand, County Defendants argued for use of the Personal Injury Valuation Handbook to assess the reasonableness of jury verdicts, which yields a value of $2,986,875 for the death of a 32-year-old decedent who is married with three kids—but this number is not limited to any specific plaintiff or noneconomic wrongful death damages.  (ECF No. 551-1 at 29.)  On the other hand, Plaintiffs alleged there were comparable cases with awards of $27 to $65 million, though these also involved multiple types of damages.  (ECF No. 564 at 17.)  Considering settlement amounts to minors for a parent's wrongful death, courts have also noted a wide range of awards.  See Garlick v. County of Kern, Case No.: 1:13-cv-01051-LJO-JLT, 2016 WL 4087057, at *3 (E.D. Cal. Aug. 2, 2016) (collecting net settlement amounts for minors who lost a parent after an altercation with police officers from $2,054.17 to $2,646,765.90).  Cases specifically addressing noneconomic

wrongful death damages also reflect a broad range of awards.  Compare Schwarder v. U.S., 974 F.2d 1118, 1121 (9th Cir. 1992) (District Court in wrongful death action awarded minor children noneconomic damages of $50,000-$80,000 each) with McAsey v. U.S. Department of Navy, 201 F.Supp.2d 1081, 1101-02, 1105 (N.D. Cal. Mar. 19, 2002) (awarding noneconomic wrongful death damages of $3 million to wife and $1 million each to adult children, where 55-year-old man had close, fulfilling relationships with his family).  Overall, and given the procedural history of this case, the Court finds the $2 million settlement to each Minor Plaintiff for their father's wrongful death to be fair and reasonable.

The Court also notes that a resolution of this case, that finally ends continued litigation and ensures timely payment is in Minor Plaintiffs' best interests.  Plaintiff Nguyen has stated that since her husband's death, she has been left a single mother and relies exclusively on her late husband's social security benefits to support herself and Minor Plaintiffs.  (ECF No. 619-1 at 3.)  The damages that Plaintiff would have recovered after a retrial on noneconomic wrongful death damages was uncertain.  And there was no guaranty of when Plaintiffs would be able to collect on any such award, as County Defendants may have further litigated the jury verdicts.  This resolution ensures final, prompt resolution and payment.  While Minor Plaintiffs will not benefit from their portion of the settlement until adulthood, they will benefit from the settlement proceeds that will be distributed to their mother, who cares for and supports Minor Plaintiffs.  See ECF No. 229 at 6 (Judge Huff approving an earlier settlement agreement with dismissed defendants, noting that "Minor Plaintiffs benefit from the portion of the settlement that is directed to their mother Plaintiff Loan Thi Minh Nguyen, a single parent with limited resources, by providing immediate resources to the household."); see also Napier v. San Diego Cnty., No. 15-cv-581-CAB-KSC, 2017 WL 5759803, at *3 (S.D. Cal. Nov. 28, 2017) (noting the proposed settlement "allows for certainty of recovery for the minor Plaintiff, as opposed to the uncertainty associated with a jury verdict").

Based upon recoveries in similar actions and the procedural history of this case, the Court finds that the proposed net recovery of $1.2 million per Minor Plaintiff is fair, reasonable, and in the minor's best interests.

### 2.   Attorney's Fees and Costs

The California Probate Code provides that expenses—including attorney's fees—to be paid out of a settlement in which a minor has an interest must be approved by the court.  See Cal. Prob. Code §§ 3600, 3601.  To determine whether a request for fees is reasonable for representation of a minor, the Court may consider the time and labor required, whether the minors' representative consented to the fee, the amount of money involved and the results obtained, and whether the fee is fixed, hourly, or contingent.  See Cal. R. of Ct. 7.955(b).  When a fee is contingent, the Court should also consider the risk of loss, the amount of costs advanced by the attorney, and the delay in reimbursement of costs and payment of fees to determine if the amount is reasonable.  See Cal. R. of Ct. 7.955(b)(13).  "Generally, fees in minors['] cases have historically been limited to 25% of the gross recovery."  See Napier, 2017 WL 5759803, at *3.  Most court require a showing of good cause to approve a contingency fee greater than 25%, which counsel can justify by demonstrating the provision of extraordinary services.  Schwall v. Meadow Wood Apts., No. CIV. S-07-0014 LKK, 2008 WL 552432, at *1-2 (E.D. Cal. Feb. 27, 2008).

Here, Minor Plaintiffs' counsel seeks 40% of their recovery.  (ECF No. 620 at 4.)  This amount was agreed to by Minor Plaintiffs' mother, on their behalf, and Plaintiffs' counsel in a retainer agreement entered on May 7, 2015.  (ECF No. 630-1 at 2; ECF No. 216-1 at 4-5.)  Plaintiffs' counsel has submitted a detailed declaration and supplemental briefing in support of this amount in attorneys' fees.  (ECF No. 630.)  Plaintiffs' counsel took on a significant risk by virtue of accepting this case on contingency.  The facts of this case were such that the Citizens' Law Enforcement Review Board found no wrongdoing after their investigation of this case.  See County of San Diego, Citizens' Law Enforcement Review Board, Regular Meeting Agenda June 13, 2017, *available at*

15cv2692-H (MDD)

https://www.sandiegocounty.gov/content/dam/sdc/clerb/docs/agendas/2017/0617agenda.pdf (page 3 regarding death investigation of Lucky Phounsy shows a recommended finding of "Action Justified," stating "[t]he evidence showed the alleged acts occurred and were lawful, justified and proper."). The challenges presented by this case were confirmed by the first jury's inability to reach a verdict at the first trial and the substantial discovery violations unearthed by Plaintiffs' counsel prior to the second jury trial. (ECF No. 60-1 at 2-3.) Although no recovery of costs is being sought from Minor Plaintiffs' award, Plaintiffs' counsel advanced $398,094.54 in costs in this case since 2015, and only $50,000 of those costs have been reimbursed to date. (Id. at 2, 4.)

As detailed in the Procedural History section above, Plaintiffs' counsel has done a tremendous amount of work to litigate this case in both the District Court and the Ninth Circuit Court of Appeals over eight years, including two complete trials, multiple settlement conferences, numerous motions, Ninth Circuit appeals, and preparation for a third damages-only trial. Additional time and effort was spent to effectuate the settlement of this matter. (Id. at 4.) In total, at least nine attorneys worked for more than 6,853 hours on Plaintiffs' behalf, while support staff provided over 670 hours of services. (ECF No. 630-1 at 4.) Plaintiffs' counsel has not yet received any compensation for their work on this case, including for the appellate work that was specifically excluded from the retainer agreement. (Id. at 2; see also ECF No. 216-1 at 4-5.) The persistence of counsel, excellent quality of briefing, and the remarkable $85 million jury award and finding of liability for punitive damages at the second trial demonstrate the exceptional skill that Plaintiffs' counsel brought to this representation. (Id. at 3.)

The Court finds that Plaintiffs' counsel has demonstrated that it provided extraordinary services and performance, sufficient to justify the proposed attorney's fees, which are appropriate under California law.

### 3. Disbursement of Funds

Under the California Probate Code, courts can use a variety of methods for the disbursement of settlement funds. See Cal. Prob. Code. §§ 3600 et seq. Here, the

parties propose using Minor Plaintiff's portion of the settlement funds to purchase an annuity, which will then make scheduled payments to Minor Plaintiffs, with Minor Plaintiffs each beginning to receive payments on their respective eighteenth birthdays. (See ECF No. 619.)  This is consistent with Section 3611(b) of the Code, which authorizes courts to order the settlement funds to be deposited "in a single-premium deferred annuity, subject to withdrawal only upon the authorization of the court."  See Cal. Prob. Code § 3611(b).  Additionally, having reviewed the detailed structured settlement, the Court finds that the distribution schedule is in the best interests of Minor Plaintiffs, as it represents a sound investment with payments that consider the needs and maturity of Minor Plaintiffs as they progress into adulthood.  See, e.g., S.A.C. by & through Velazquez v. Cnty. of San Diego, No. 17-CV-01893-LAB-BLM, 2020 WL 6559139, at *3 (S.D. Cal. Nov. 9, 2020) (approving disbursal under a similar annuity).  Thus, the Court finds the proposed disbursement procedure adequately protects Minor Plaintiffs' interests and complies with the law.

**B.      Motion to File Under Seal**

Finally, Plaintiffs ask the Court to file four documents under seal.  (ECF No. 618.)  Attachments A and B detail the terms of the structured settlements to Minor Plaintiffs, including the settlement amount, the issuer of the annuity, and the dates and amounts of future payments to Minor Plaintiffs.  (See ECF No. 619.)  Attachment C is Plaintiff Nguyen's declaration, which describes the distribution of the proposed settlement, including the attorney' fees and costs, and details the terms of Minor Plaintiffs' structures settlement.  (ECF No. 619-1.)  Last, Plaintiffs seek to seal the unredacted version of their Petition to Approve Compromise with County Defendants, which includes three paragraphs detailing the amount Minor Plaintiffs will receive under their structured settlement, and when such payments are to be made.  (ECF No. 619-2.)  Plaintiffs contend there is a compelling reason to seal these documents, "to protect private information relating to minors."  (ECF No. 618 at 2.)

15cv2692-H (MDD)

County Defendants opposed Plaintiffs' request to seal, claiming Plaintiffs vague interest in protecting minors' private information did not demonstrate a compelling reason to seal the documents.  (ECF No. 624.)  In reply, Plaintiffs argue that the documents Plaintiffs' seek to seal reveal when and how much Minor Plaintiffs will receive in the future.  (ECF No. 626 at 3.)  They claim that sealing is necessary to protect Minor Plaintiffs' "privacy interests and protect them from third parties who may target or solicit them when they have access to the funds."  (Id.)

Because motions for approval of minor's compromise are frequently case dispositive, the compelling reasons standard is generally applied to requests to seal in relation thereto.  See Huff v. Thousandshores, Inc., Case No. 21-cv-02173-HSG, 2022 WL 547109, at *3 (N.D. Cal. Jan. 5, 2022).  Courts have found compelling reasons exist to overcome the public right of access regarding the amount and details of a settlement to a minor, to protect the minor from predatory solicitations at a time when the minor is financially vulnerable and may be away from family.  Id. (citing Lauris v. Novartis AG, Case No. 1:16-cv-00393-SAB, ECF No. 428, at *5 (E.D. Cal. Oct. 26, 2018)).

The gross and net amounts of Minor Plaintiffs' settlement are already discernable from the publicly filed portions of the Petition.  See ECF No. 620 at 4 (explaining that $8 million of the $12 million dollar proposed settlement would be awarded to Plaintiff Nguyen and the entire settlement amount will be subject to the 40% retainer agreement, effectively disclosing that the remaining $4 million, less 40% will go to Minor Plaintiffs).  Since this information is already public and the gross amount does not disclose the dates and amounts of the structured settlement to Minor Plaintiffs, the Court does not find any compelling reasons support the sealing of information about the gross and net settlement amounts.  Further, public knowledge of these amounts is of interest to the public and to future courts evaluating similar settlements.  However, case law supports sealing the details regarding the annuities that will be used to distribute Minor Plaintiffs' settlement proceeds and the dates and amounts of the structured settlements to protect Minor Plaintiffs' as they enter adulthood.

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion to seal.  The Clerk may file Attachments A (K.J.P. Structured Settlement) [ECF No. 619 at 1-4] and B (K.P.P. Structured Settlement) [id. at 5-8] under seal.  The motion to file under seal is **DENIED in part** as to Attachment C and the Petition.  Plaintiffs are **ORDERED** to refile redacted versions of the Petition [ECF No. 620] and Attachment C [ECF No. 619-1], leaving public the gross and net recovery amounts to Minor Plaintiffs, and redacting only information involving the timing and amount of the structured settlement payments.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds the proposed settlement to be a fair and reasonable resolution of this case in the best interests of Minor Plaintiffs, under both state and federal law.  The Court **APPROVES** the Minor Plaintiffs' compromise with County Defendants.

Plaintiffs' Motion for Order to File Documents Under Seal [ECF No. 618] is **GRANTED in part** and **DENIED in part**.  Attachments A and B [ECF No. 619] may be filed under seal, while Plaintiffs must refile Attachment C and the Petition, redacting only the details of Minor Plaintiffs' structured settlement schedule and the annuity implementing the same.

**IT IS SO ORDERED**.

Dated:  February 28, 2023

Honorable Michael S. Berg
United States Magistrate Judge

15cv2692-H (MDD)